UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| CATRIONA N.B., | Case No. 6:22-cv-1722-AR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security benefits, plaintiff Catriona N.B. (her last name omitted for privacy) challenges the Administrative Law Judge's evaluation by failing to identify specific, clear and convincing reasons for discounting her subjective symptom testimony and improperly finding unpersuasive

the medical opinion of physical therapist, Kersey Schuh, PT, DPT. Because the court agrees with plaintiff, the Commissioner's decision is reversed and remanded for further proceedings.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) on August 8, 2019, alleging disability beginning on January 3, 2019. (Tr. 244.) Her claim was initially denied on November 15, 2019, and again upon reconsideration on May 15, 2020. (Tr. 77, 96.) Afterwards, plaintiff filed for a hearing that was held before the ALJ on August 23, 2021. (Tr. 33, 105.)

In denying plaintiff's applications for DIB, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Tr. 18.) At step two, the ALJ determined that she had the following severe impairments: status post right intra-articular radial head fracture and minimally displaced coronoid process fracture in June 2018, with subsequent non-union, but stable deformity shown upon imaging; right lateral epicondylitis, cubital tunnel syndrome, and carpal tunnel syndrome; cervical degenerative joint disease with radiculopathy; morbid obesity; osteoarthritis; and migraine headache disorder. (Tr. 18.) At step three, the ALJ determined that her impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 20.)

---

[1]   This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]   To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id*.; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

Page 2  – OPINION AND ORDER

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. §§ 404.1545, 416.945, the ALJ determined that plaintiff has the RFC to perform light work with the following limitations: no climbing of ladders, ropes, or scaffolds; no crawling; no exposure to heavy industrial vibration or workplace hazards such as unprotected heights, dangerous moving machinery, or commercial driving; no more than frequent reaching and handling with the dominant right upper extremity; and no more than occasional fingering with the dominant right hand. (Tr. 21.)

At step four, the ALJ determined that plaintiff cannot perform any past relevant work. (Tr. 24.) With the RFC in hand, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as usher, sandwich board carrier, and counter clerk. (Tr. 26.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

**DISCUSSION**

A.  ***Basis for Discounting Plaintiff's Testimony***

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). In the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017).

Plaintiff contends that she cannot engage in full-time, competitive employment because of her physical and mental health conditions, including damaged right elbow, bipolar disorder, depression, and anxiety. (Tr. 287.) Due to the injury to her right elbow, plaintiff alleges that she is in constant pain, that the functional usage of her right arm has dropped to less than 50 percent, and that she cannot lift, grip, or pronate objects weighing at least one pound. (Tr. 295-96.) Plaintiff also alleges that she has a difficult time showering, needs the help of her two sons to carry groceries, do the laundry, and prepare meals, needs family to help her change the water in her fish tank, and that the pain in her arm prevents her from sleeping. (Tr. 296.) Plaintiff also reported difficulties dressing, bathing, driving long distances, and avoids preparing meals that

Page 4 – OPINION AND ORDER

take more than 15 minutes. (Tr. 297.) Because she cannot use her right arm without pain, plaintiff reportedly does not go shopping alone, does not do yard work, and can walk less than 30 minutes before needing to stop and adjust her arm, while being able to walk for three hours if cradling her arm. (Tr. 298, 300.) Plaintiff can also handle stress, written and spoken instructions, changes in routine, and gets along well with others. (Tr. 300-301.) To manage her condition, plaintiff indicated that she takes medication but did not list them or their side effects. (Tr. 301.)

      At the hearing, plaintiff stated that she is right-hand dominant, is unable to use her right arm, and is very uncoordinated with her left hand. (Tr. 46.) She explained that she has been dropping and breaking dishes when using her left hand and that, with her right hand, she is unable to grip and hold a pen, unable to type, and unable to fill out forms, including the forms necessary for her DIB claim. (Tr. 46.) During the hearing, plaintiff said she takes care of her new two-and-a-half-month-old daughter with the help of her best friend, husband, and disabled 14-year-old son. (Tr. 37, 46.) When asked about the use of her right hand, she stated she was unable to use a can opener, cannot chop vegetables with a knife, and can use a fork but usually does not use a knife at the same time. (Tr. 47-48.) Plaintiff continued, stating she bought a motorized toothbrush because the "back-and-forth [brushing] movement" caused her so much pain she "would end up . . . rocking on the floor crying." (Tr. 48.) She also got a motorized bed because pain would not allow her to sleep. (Tr. 48.) Plaintiff also stated that although she can drive, she cannot drive long distances. (Tr. 49.) When asked about medication, plaintiff said she takes Dilaudid, that it takes the edge off by dulling the pain but does not get rid of it, and that it makes her itch. (Tr. 50.)

When plaintiff moved on to discussing her mental health related impairments, she said that she experiences anxiety when around other people because she has to avoid people bumping into her arm in order to avoid "crippling[]" pain, has depression because she cannot work, and has been very irritable as a result. (Tr. 50-51.) She also has trouble focusing, stating that she gets easily distracted from tasks and cannot complete even a single task, such as cleaning a room or finishing laundry, without it taking days. (Tr. 51.) She stated that she has only recently begun seeking out therapists, that she is not on any medication, and that she was diagnosed with bipolar disorder when she was thirteen. (Tr. 52.)

Turning back to her physical impairment, plaintiff said that she cannot reach above her head or across her body with her arm, cannot pronate or rotate properly, cannot support things with her arm, and that even her phone is too heavy. (Tr. 53.) She does not carry groceries when grocery shopping and she does not go alone. (Tr. 53.) When asked about a specific skateboarding incident in which she fell, she explained that she was showing her sister how to ride because her sister "rides the same as I do," and that it slipped from under her, causing her arm further injury. (Tr. 54.) She also explained that she homeschooled two of her children, with her husband helping after work, for five plus hours a day but could no longer do so when her daughter was born. (Tr. 54-55.)

The ALJ discounted plaintiff's subjective symptom testimony because: (1) her level of activity was inconsistent with her allegations; (2) her statements were inconsistent with her medical records; and (3) her treatment was infrequent.

1. **Daily Activities**

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict her testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)). Further, the "ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

The ALJ discounted plaintiff's subjective symptom testimony because she carried a safe, changes the water in her fish tank, and homeschooled her children while being the primary caregiver to a special needs teenage son and a newborn. (Tr. 23.)

Here, the ALJ did not explain how plaintiff's ability to perform these daily activities undermines her testimony. Nor did the ALJ find that plaintiff spent a "substantial" portion of her day engaged in household chores or that these activities are transferrable to a work environment. *Ghanim v. Colmin*, 763 F.3d 1154, at 1165. Furthermore, plaintiff stated that she stopped homeschooling her children because of her newborn, that she received her husband's help with the homeschooling, that she received assistance when changing the water in her fish tank, and

that she needed several rest breaks when carrying a safe, an instance that would require more information in order to draw a reasonable inference of plaintiff's capabilities. (Tr. 54-55, 296, 1171.) What plaintiff helped her special needs son with is also unclear.

Because the ALJ did not connect these activities to any symptom or the degree of any symptom alleged by plaintiff, this fails to provide a specific, clear and convincing basis upon which to discount plaintiff's subjective symptom testimony. *See Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023).

   2. **Treatment**

The ALJ also discounted plaintiff's subjective symptom testimony because she "has not sought medical treatment on a frequent basis." (Tr. 22.) The ALJ does not provide reasoning for the infrequency of treatment analysis but does highlight plaintiff's non-compliance with treatment recommendations in August and September of 2018, before the alleged onset date. (Tr. 22, citing Tr. 808, 812.) On August 15, 2018, three weeks after plaintiff sustained injury to her elbow, it was recommended that she stop using a splint and sling and remain nonweightbearing without any strengthening in her right arm. (Tr. 812.) Because of concerns around whether she could adequately protect her arm while caring for her three small children and elderly father, it was also recommended that she continue to wear her splint sparingly. (Tr. 812.) She also received a referral for physical therapy. (Tr. 812.) On September 4, 2018, she reported she had largely discontinued use of the splint, remained nonweightbearing, and had not yet begun physical therapy. (Tr. 808.)

Reviewing the record, however, reveals that although plaintiff did not begin physical therapy until September 14, 2018, she attended 36 sessions from the date she began to August

Page 8 – OPINION AND ORDER

13, 2019. (Tr. 720.) Plaintiff did delay treatment for one month following her referral to physical therapy, but it is unclear how plaintiff was noncompliant with wearing her splint when the recommendation was that she wear it sparingly, which she reportedly did. (Tr. 808, 812.)

With only a single instance of noncompliance due to a one-month delay in treatment, and subsequent consistent treatment afterwards, the ALJ's finding is not supported by substantial evidence, is not a reasonable interpretation of the record, and therefore, not a clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 3. Inconsistent Statements

The ALJ discounted plaintiff's subjective symptom testimony based on alleged inconsistencies with the medical record. Inconsistency with the medical record can provide a clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole reason for doing so. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

The ALJ discounted plaintiff's subjective symptom testimony based on normal imaging following a motor vehicle accident in May 2018, imaging from August 2018 following an accident in which plaintiff broke her right elbow showing a comminuted and minimally displaced, essentially non-displaced radial head fracture, and imaging from November 2018 following an incident where plaintiff fell on her right elbow showing a recurrent fracture and that her previous injury had not healed correctly. (Tr. 22, citing Tr. 691, 799, 818.) The ALJ also pointed to reports showing no improvement following an injection in July 2019, and nerve conduction testing in August 2020 which showed no mononeuropathy, polyneuropathy, or cervical radiculopathy. (Tr. 22-23, citing Tr. 1202, 1225.) Lastly, the ALJ cited reports of near full range of motion and minimal radial head pain on rotation in July 2019, and x-rays from April

2021 showing unremarkable distal humerus and proximal ulna while also showing a posttraumatic deformity of the radial head and slight impaction deformity with no acute fracture. (Tr. 23, citing Tr. 694, 1204-1205, 1364.) The court is unconvinced.

Although plaintiff had normal imaging results in May 2018, she also reported being in "excruciating and horrendous" pain during a physical therapy evaluation in June. (Tr. 728.) Upon examination, she showed "signs and symptoms consistent with ulnar nerve irritation/cervical radiculopathy," including pain and increased effort in right shoulder abduction and biceps. (Tr. 728-29.) The imaging from August 2018 showed a comminuted and minimally displaced, essentially non-displaced radial head fracture. (Tr. 698.) At that same appointment, however, plaintiff's right upper extremity was tender to palpation throughout her elbow and bicep, the pain was reportedly worse over the radial head and medial epicondyle, and she was able to move supinate to neutral though rested in pronation to 90 degrees. (Tr. 684.) Notably, the physical exam was incomplete due to pain, resulting in an unknown pronation block, and she was placed in a splint with the possibility of it making her elbow stiffer. (Tr. 685.) In November 2018, an MRI following another injury to her right elbow showed a persistent intra-articular fracture of the radial head that could represent a recurrent fracture. (Tr. 798.) On examination, she also had a positive Tinel's test at the cubital tunnel and was tender to palpation at the medial and lateral epicondyles as well as the flexor pronator mass. (Tr. 797.)

In February 2019, plaintiff's right elbow was tender to palpation, had a positive Tinel's test, experienced numbness in her fingers, and had a positive cubital compression test. (Tr. 1207.) She also had minimal radial head pain with rotation, had near full range of motion when rotating, and received a steroid injection. (1207.) At a follow-up appointment in July, plaintiff

reported the steroid injection provided minimal relief for only a couple of days. (Tr. 1204.) On examination, her right elbow and the radial nerve area were tender to palpation, and although she had full range of motion as it related to rotation, she had a positive Tinel's test, positive cubital compression tests, and numbness in her fingers. (Tr. 1204.) Surgery was recommended due to lack of progress with conservative treatment. (Tr. 1205.) According to a physical therapy report from March 10, 2020, she did not receive surgery due to lack of insurance. (Tr. 1184.)

Plaintiff was not seen again by her orthopedist until June 2020. (Tr. 1200.) At this appointment, her elbow was markedly tender to palpation at the right lateral epicondyle, showed some pain around the radial head with rotation, was in remarkable pain around the radial nerve and tunnel, and had full range of motion in her elbow. (Tr. 1202.) She also reported self-medicating with Tylenol, Motrin, and alcohol. (Tr. 1202.) Surgery was again recommended. (Tr. 1202.) Plaintiff testified at her 2021 hearing that she could not afford surgery in 2020 because her insurance did not approve it. (Tr. 49; *see also* Tr. 1168, 1172.) Plaintiff also underwent a nerve conduction study in August 2020, where findings were normal with no evidence of mononeuropathy, polyneuropathy, or cervical radiculopathy. (Tr. 1225.) At the time, it was also noted that the study was technically challenging because of plaintiff's reduced range of motion and tolerance for the test. (Tr. 1225.) Following an at-home fall in August 2021, plaintiff received a new round of x-rays that were unchanged from those one year prior. (Tr. 1361-63.)

Physical therapy records from January 2018 to August 2019 detail high levels of continuing pain after 36 sessions, culminating in decreased strength in her right arm and hand, rated as 2/5 and a grip strength of zero. (Tr. 901.) Although plaintiff discontinued therapy because of lack of insurance, when she resumed in March 2020, atrophy was noted along

common extensor tendon, supinator, and brachioradialis. (Tr. 1184.) She also reported pain at 7.5/10 and was rated as 2/5 in strength, grip, extension, supination, and flexion, with a 3/5 in pronation. (Tr. 1185.) Plaintiff continued in physical therapy, attending 60 sessions between March 2020 and May 2021, with records continuing to reflect her significantly decreased 2/5 right arm strength and zero pounds in grip strength. (Tr. 1249.)

On this record, plaintiff's statements of pain and lack of functioning in her right arm have been consistent. As such, the ALJ's finding is not supported by substantial evidence, is an unreasonable interpretation of the record, and does not serve as a clear and convincing basis for discounting plaintiff's subjective symptom testimony.

**B.**     ***Evaluating the Medical Opinion of Kersey Schuh, PT, DPT***

For disability claims filed on or after March 27, 2017, new regulations for evaluation medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. § 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant.") Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by

whether the medical source presents explanations and objective medical evidence to support his or her opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ also may consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how they considered those secondary medical factors unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").[3] *Id.*

In assessing plaintiff's RFC, the ALJ found unpersuasive the medical opinion of Kersey Schuh, PT, DPT, plaintiff's physical therapist, because "the ultimate issue of disability is reserved to the Commissioner," it failed to "set out functional limitations beyond general

---

[3] Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion;" rather, the ALJ's reasons must "simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

statements," was inconsistent with plaintiff's ability to sit and stand, and inconsistent with plaintiff's daily activities and imaging and nerve conduction studies. (Tr. 24.) The ALJ also noted that Schuh's opinion "appears [to be] based on the claimant's subjective pain allegations." (Tr. 24.)

Plaintiff asserts that the ALJ did not properly consider Schuh's opinion, including her inability to manipulate tools such as hair clippers and brooms, inability to lift more than one pound, or that she requires more time to complete tasks with her right arm. (Pl.'s Br. at 13-14.) Plaintiff also asserts that the ALJ failed to adequately explain how imaging and x-rays, arm pain while sitting and standing, and her daily activities were inconsistent with plaintiff's allegations of pain and inability to use her right arm. (Pl.'s Br. at 14.) The Commissioner argues that Schuh made a disability determination reserved for the Commissioner, that Schuh failed to set out functional limitations, that Schuh's opinion on plaintiff's ability to sit or stand is inconsistent with plaintiff's daily activities, and that Schuh's opinion appears to be largely based on plaintiff's subjective complaints of pain. (Def.'s Br. at 10-13.)

The court agrees with plaintiff: the ALJ's findings are unsupported by substantial evidence and are insufficient explanations for discounting Schuh's opinion.

Schuh met with plaintiff for physical therapy before and after her alleged onset date for a total of at least 96 sessions. (Tr. 701, 901.) From September 14, 2018 to August 13, 2019, Schuh observed plaintiff's right arm deteriorate in use and function. At her initial evaluation on September 14, 2018, plaintiff's right-side strength was assessed as 2/5 for flexion, extension, and supination, 2/3 for pronation, and was tender to palpation. (Tr. 721-22.) In November, after 12 sessions of physical therapy, plaintiff had improved her range of motion on flexion, extension,

and supination but continued to experience pain at the end range, continued to report 7/10 or higher for pain, and was unable to lift an empty 20-gallon fish tank, which she could do previously. (Tr. 725.) In April 2019, following 12 more sessions, plaintiff had continued improving her range of motion, but her strength remained the same. (Tr. 724.) At her last appointment in August 2019, she once again demonstrated 2/5 strength, and her grip strength had decreased to zero pounds. (Tr. 720.)

Due to a loss of insurance, plaintiff did not return to physical therapy until March 2020 and was unable to obtain pain medication. (Tr. 701.) Upon observation, atrophy was noted in her right arm along common extensor tendon, supinator, and brachioradialis. (Tr. 701.) Her elbow/forearm strength was assessed as 2/5, was tender to palpation, and she could reportedly manipulate her right hand well enough to "fasten a front bra, wash her hair, and put her hair into a bun." (Tr. 701-702.) These observations continued throughout the rest of plaintiff's sessions from May to September, with variation in her range of motion but without any increase in her level of strength. (Tr. 1158-60, 1171-82, 1192-97.) On September 16, 2020, Schuh's notes transitioned to testing for pain due to palpation rather than measuring plaintiff's strength levels. (Tr. 1161.) From September to October, plaintiff continued being positive for pain due to palpation and reported a pulling sensation when standing and walking. (Tr. 1162-1168.) At an assessment on October 19, 2020, Schuh noted that after 24 sessions, plaintiff's right arm and grip strength had not improved, and her range of motion had not decreased. (Tr. 1169.) Further assessments done on November 23, 2020, January 7, 2021, and March 19, 2021, reflected no change since the assessment done in October. (Tr. 1138, 1146, 1156.)

The ALJ does not address plaintiff's physical therapy records except to note

Page 15 – OPINION AND ORDER

inconsistencies with plaintiff's activities of daily living regarding changing water in a fish tank, carrying a safe, and falling off a skateboard, all of which were addressed, and rejected, in an earlier portion of this opinion. (Tr. 24, citing Tr. 1171, 1178, 1187.) In addition, the ALJ's assertion that Schuh's opinion is based on plaintiff's subjective complaints fails because Schuh's observations of plaintiff are clinical observations taking place during physical therapy sessions and cannot be disregarded. As for Schuh's lack of functional limitations, his letter does contain such information, such as plaintiff's inability to lift, carry or manipulate her arm in such a way as to allow her to cut, braid, style, wash, and clean hair, and her inability to hold hair clippers or dryers. (Tr. 900.) His opinion also states her grip strength diminished over time, beginning at 32 pounds, then dropping to 15 pounds, before finally reaching zero pounds. (Tr. 900.) Although Schuh did state that plaintiff is "unable to work," that statement alone does not invalidate his clinical observations and proffered explanations. Lastly, the ALJ does not explain how x-rays showing multiple and ongoing injuries to plaintiff's elbow and nerve conduction studies ruling out neuropathy invalidates over two years of clinically observed physical therapy records.

In light of Schuh's treatment notes supporting his opinion, the ALJ's determination that his opinion is unpersuasive is not backed by substantial evidence and is an unreasonable interpretation of the record; the ALJ has erred.

D.   *Remedy*

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d

1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Plaintiff argues that a remand for further proceedings is the proper course here because the ALJ failed to adequately explain why she discounted plaintiff's subjective symptom testimony and failed to properly evaluate Schuh's medical opinion. As discussed above, the ALJ erred in evaluating plaintiff's subjective symptom testimony as well as Schuh's medical opinion. Plaintiff does not challenge the ALJ's determination to find the agency physicians' opinions persuasive, which necessarily results in a conflict. As such, the issue of plaintiff's RFC remains unresolved. *Taylor v. Berryhill*, 729 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made."). Such an error is "not inconsequential to the ultimate nondisability determination." *See Treichler v. Comm'n Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). On remand the ALJ shall offer plaintiff the opportunity for a *de novo* hearing, take any further action needed to complete the record, and issue a new decision. The ALJ will reevaluate the plaintiff's alleged symptoms and incorporate that testimony into the

RFC, or provide with clear and convincing reasons why that testimony is rejected. The ALJ will also reevaluate Schuh's medical opinion and incorporate it into the RFC, or provide substantial evidence in support of rejecting that opinion. As warranted, the ALJ will reevaluate plaintiff's RFC and obtain supplemental VE evidence as well. *Garrison*, 759 F.3d at 1019 (stating remand is appropriate where "additional proceedings can remedy defects in the original administrative proceeding").

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for further proceedings.

ORDERED on March 20, 2024.

_____
JEFF ARMISTEAD
United States Magistrate Judge